UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM E. HOOKS,

Plaintiff,

v.

9:07-CV-0724
(TJM/RFT)

T. HOWARD, Correctional Officer, Upstate Correctional
Facility; MR. MCGAW, Correctional Officer, Upstate
Correctional Facility; GALIGER, Correctional Officer,
Upstate Correctional Facility; MR. GREEN, Correctional
Officer, Upstate Correctional Facility; MR. WILLETTE,

Defendants.

APPEARANCES:                          OF COUNSEL:

WILLIAM E. HOOKS,
Plaintiff, *pro se*
98-A-1476
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

HON. ANDREW M. CUOMO                  CHRISTOPHER W. HALL, ESQ.
Attorney for Defendants
The Capitol
Albany, New York 12224

Thomas J. McAvoy, Senior U.S. District Judge

## MEMORANDUM-DECISION and ORDER

*Pro se* Plaintiff William E. Hooks brings this civil rights action pursuant to 42 U.S.C.

§ 1983 alleging that the defendants violated his constitutional rights during his confinement at

Upstate Correctional Facility ("Upstate").  Dkt. No. 1.  Defendants have filed a motion for

summary judgment under Federal Rule of Civil Procedure 56 dismissing the complaint in its

entirety.  Dkt. No. 49.  Plaintiff has submitted papers in opposition.  Dkt. No. 51.  For the reasons

set forth herein, defendants' motion for summary judgment is granted in part and denied in part. With the exception of plaintiff's claims against defendants McGaw, Willette, Galiger and Green arising out of the alleged use of excessive force against plaintiff on August 7, 2006, all of plaintiff's claims are dismissed.  In light of the foregoing, defendant C.O. Howard is dismissed as a defendant in this action.

## I.      BACKGROUND

At all relevant times concerning this action, plaintiff was an inmate at Upstate in the custody of the New York State Department of Correctional Services ("DOCS").  Plaintiff filed his complaint on July 12, 2007.  Dkt. No. 1.  Plaintiff alleges that defendants, Correction Officers Howard, McGaw, Galiger, Green and Willette, engaged in misconduct in violation of his constitutional rights on eleven separate occasions during the period 2005-2007, each of which is addressed in defendants' summary judgment motion.

Defendants argue that plaintiff's claims with respect to eight of the eleven incidents complained of are subject to dismissal because plaintiff failed to exhaust his administrative remedies as required under law.  Dkt. No. 49.  In support of their motion, defendants rely upon the supporting affidavits of Christine Gregory, Inmate Grievance Program ("IGP") Supervisor at Upstate ("Gregory Aff." and "Gregory Supp. Aff."), and Karen R. Bellamy, Director of DOCS IGP ("Bellamy Aff.").  Bellamy is the custodian of records maintained by the Central Office Review Committee ("CORC").  Bellamy Aff. ¶ 2.  As to the three exhausted claims, defendants argue that those claims must be dismissed because the facts alleged by plaintiff are not sufficient to state claims for the violation of his constitutional rights upon which relief may be granted by this Court.  Defendants have submitted a statement of material facts as required by Local Rule

7.1 ("Defs. Stmt."), and a supporting memorandum of law ("Defs. MOL").

Plaintiff has responded in opposition to defendants' motion.  Dkt. No. 51.  In that

response, plaintiff admits that five of his claims are unexhausted, but argues that he properly

exhausted his administrative remedies with respect to three of the claims on which defendants

seek summary judgment.  Plaintiff has not responded to defendants' arguments in support of the

requested dismissal of plaintiff's three exhausted claims.  Plaintiff has submitted a statement of

material facts as required by Local Rule 7.1 ("Pl. Stmt."), and a supporting memorandum of law

("Pl. MOL").

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.

Under Rule 56, the entry of summary judgment is warranted if "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  A fact is "material" only if it would have some effect on the outcome of the suit.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jeffreys v. City of New York*, 426

F.3d 549, 553 (2d Cir. 2005).  A material fact is genuinely in dispute "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The party moving for summary judgment bears the initial burden of showing, through the

production of admissible evidence, that there is no genuine issue of material fact to be decided

with respect to any essential element of the claim in issue.  *Celotex Corp. v. Catrett,* 477 U.S.

317, 322 (1986).  In meeting this burden, the moving party "bears the initial responsibility of

3

informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

In the event this initial burden is met, the nonmoving party must produce evidence

demonstrating that genuine issues of material fact exist.  *Celotex*, 477 U.S. at 324; *Salahuddin v.

Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Though *pro se* plaintiffs are entitled to special

latitude when defending against summary judgment motions, they must do more than "simply

show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Thus, the opposing party must

proffer admissible evidence that "set[s] out specific facts" showing a genuinely disputed factual

issue that is material under the applicable legal principles.  Fed. R. Civ. P. 56(e); *see, e.g.,

Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004).

When deciding a summary judgment motion, a court must resolve any ambiguities, and

draw all justifiable factual inferences in favor of the nonmoving party.  *Major League Baseball

Properties, Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir. 2008); *Jeffreys,* 426 F.3d at 553.  The

entry of summary judgment is warranted only in the event of a finding that no reasonable trier of

fact could rule in favor of the non-moving party.  *See Building Trades Employers' Educ. Ass'n v.

McGowan,* 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (summary

judgment is appropriate only when "there can be but one reasonable conclusion as to the

verdict").

## B. Exhaustion of Administrative Remedies

The Prisoner Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 95 (2006); *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  The Supreme Court explained in *Woodford* that the PLRA requires "proper exhaustion," which "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  *Woodford* 548 U.S. at 90 (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002)).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense," an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the established grievance system in order to satisfy the PLRA.  *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004)) (emphasis omitted).

The New York State Department of Correctional Services (DOCS) has created a three-

step grievance process known as the Inmate Grievance Program (IGP).  *See Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir. 2004).[1]  First, the inmate must file a grievance complaint with the facility's IGP Clerk within twenty-one (21) calendar days of the incident.  If a grievance complaint form is not readily available, a complaint may be submitted on plain paper.  The grievance complaint is then submitted to the Inmate Grievance Resolution Committee (IGRC), which has sixteen (16) calendar days from receipt to informally resolve the issue or conduct a hearing.[2]  The IGRC must issue a written decision within two (2) working days of the conclusion of the hearing.  Second, the inmate may appeal the IGRC decision to the Superintendent within seven (7) calendar days of receipt of the IGRC's decision.  The superintendent is to issue a written decision within twenty (20) calendar days of receipt of the appeal.  Third, the inmate may appeal to CORC within seven (7) calendar days of receipt of the superintendent's written decision.  CORC is to render a final administrative determination within thirty (30) calendar days of receipt of the appeal.  It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, in order to complete the grievance process.  Upon the completion of all three steps, "a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court."  *Colon v. Harvey,* 344 F. Supp.2d 896, 897 (W.D.N.Y. 2004) (*citing Neal v. Goord* 267 F.3d 116, 122 (2d Cir. 2001)).

---

[1]  The provisions of the grievance procedure established by DOCS are set forth in 7 N.Y.C.R.R. §§ 701.1 *et seq*.

[2]  Allegations of employee misconduct bypass the IGRC and go directly to the superintendent for review.  If the superintendent determines that the grievance is "a bona fide harassment issue," the superintendent assumes responsibility for the matter.  If not, the grievance is returned to the IGRC for normal processing.

The Second Circuit has suggested a three-pronged inquiry when the inmate plaintiff

opposes a defendant's assertion that the inmate failed to exhaust his or her available

administrative remedies.  In *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), the Second

Circuit stated:

> Depending on the inmate's explanation for the alleged failure to exhaust, the court
> must ask whether administrative remedies were in fact "available" to the prisoner.
>  *Abney v. McGinnis*, 380 F.3d 663, [667-68 (2d. Cir. 2004)].  The court should
> also inquire as to whether the defendants may have forfeited the affirmative
> defense of non-exhaustion by failing to raise or preserve it, *Johnson v. Testman*,
> 380 F.3d 691, [695 (2d. Cir. 2004)], or whether the defendants' own actions
> inhibiting the inmate's exhaustion of remedies may estop one or more of the
> defendants from raising the plaintiff's failure to exhaust as a defense, *Ziemba* [v.
> *Wezner*, 366 F.3d 161, 163 (2d Cir. 2004)].  If the court finds that administrative
> remedies were available to the plaintiff, and that the defendants are not estopped
> and have not forfeited their non-exhaustion defense, but that the plaintiff
> nevertheless did not exhaust available remedies, the court should consider
> whether "special circumstances" have been plausibly alleged that justify "the
> prisoner's failure to comply with administrative procedural requirements." *Giano
> v. Goord*, 380 F.3d 670, [675 (2d Cir. 2004)] (citing *Berry v. Kerik*, 366 F.3d 85,
> 88 (2d Cir. 2003)[.]

*Hemphill*, 380 F.3d at 686.  While recognizing that the Supreme Court's decision in *Woodford*

may cast some doubt on the continued viability of the *Hemphill* analysis, the Second Circuit has

continued to scrutinize failure to exhaust claims with reference to these three prongs.  *See*

*Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("We need not determine what

effect *Woodford* has on our case law in this area, however, because [plaintiff] could not have

prevailed even under our pre- *Woodford* case law."); *Reynoso v. Swezey*, 238 Fed.Appx. 660, 662

(2d Cir. 2007), *cert. denied*, __ U.S. __, 128 S.Ct. 1278 (2008) (noting that *Hemphill* recognized

"nuances in the exhaustion requirement," the Court found that "[b]ecause we agree with the

district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to

7

decide whether *Woodford* has bearing on them."); *Macias*, 495 F.3d at 43 n.1 (we need not

decide what effect *Woodford* has on *Hemphill*'s holding that where administrative procedures are

confusing "a reasonable interpretation of prison grievance regulations may justify an inmate's

failure to follow procedural rules to the letter.").  As has the Second Circuit, as well as the other

district courts in this Circuit, this Court will apply the *Hemphill* three-part inquiry to the

exhaustion claims.  *See e.g., Butler v. Martin,* 07-CV-521 (FJS/GHL), 2010 WL 980421, *1

(N.D.N.Y. Mar. 15, 2010) (the magistrate judge "correctly applied the Second Circuit's three-

part inquiry" for analyzing claims of non-exhaustion); *Winston v. Woodward*, 05 Civ. 3385, 2008

WL 2263191, *6 (S.D.N.Y. May 30, 2008) (collecting cases).

    To be "available" for purposes of the PLRA, an administrative remedy must afford "the

possibility of some relief for the action complained of."  *Booth v. Churner*, 532 U.S. 731, 738

(2001).  In addition, a court deciding this issue must apply an objective test and determine

whether a similarly situated person of ordinary firmness would have deemed the administrative

remedy available.  *Hemphill*, 380 F.3d at 688.

     "A plaintiff's failure to exhaust . . . may be excused on the grounds of estoppel where the

plaintiff was misled, threatened, or otherwise deterred from fulfilling the requisite procedures."

*Winston*, 2008 WL 2263191 at *9 (citing *Hemphill*, 380 F.3d at 688-89) (other citation omitted).

However, alleged intimidation will provide a basis to excuse the filing of a grievance only

against the person alleged to have engaged in the intimidation.  *Snyder v. Whittier*, 05-CV-1284

(TJM/DEP), 2009 WL 691940, *9 (N.D.N.Y. Mar. 12, 2009); *Larry v. Byno*, 01-CV-1574

(TJM), 2006 WL 1313344, **3-4 (N.D.N.Y. May 11, 2006).[3]

In addition, the Court must also consider whether "special circumstances" have been plausibly alleged, that justify "the prisoner's failure to comply with administrative procedural requirements." *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004). Justification "must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Id*. at 678. Special circumstances may be found to exist, for example, where prison officials "inhibit an inmate's ability to utilize administrative grievance procedures;" where the prisoner received a favorable disposition from his grievance but the time to appeal had expired and no relief was forthcoming; and where all appeals were undertaken but prison officials did not respond within the required time period. *Id.* at 677. The effect of a plaintiff's justification as to why there was no exhaustion "is that, though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding." *Id.* at 676.

Here, it is undisputed that administrative remedies were available to plaintiff through the Upstate IGP, which plaintiff has acknowledged and, in fact, utilized by filing numerous grievances. *See Mingues v. Nelson*, 96 CV 5396, 2004 WL 324898, *4 (S.D.N.Y. Feb. 20, 2004)

---

[3] Conclusory allegations of intimidation are not sufficient. In *Veloz v. New York*, the prisoner claimed that he placed his grievances in the mail, "but that his grievances were either misplaced or destroyed." 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004), *aff'd*, 178 Fed. Appx. 39 (2d Cir. 2006). The Court found it significant that plaintiff "offers no evidence that any particular officer thwarted his attempts to file [the grievances] . . . His allegations 'stand alone and unsupported.'" *Id.* at 516 (quoting *Nunez v. Goord*, 172 F. Supp.2d 417, 429 (S.D.N.Y. 2001)); *see also Winston*, 2008 WL 2263191, *10 (rejecting assertion that plaintiff failed to exhaust administrative remedies due to mail tampering because plaintiff failed "to put forth any corroborating evidence, either direct or circumstantial").

(the record is unmistakably clear "that an appropriate administrative procedure was available" to

plaintiff who did not deny knowledge of the IGP).  It is also clear that defendants have not

forfeited the administrative remedy defense in this action.  Defendants asserted plaintiff's failure

to exhaust in their answer to the complaint.  Dkt. No. 16 at 2.

Accordingly, the Court will consider whether plaintiff exhausted his administrative

remedies with respect to the eight claims identified by defendants in their motion and, if not,

whether defendants are estopped from asserting this defense or whether any "special

circumstances" exist which might excuse plaintiff's failure to exhaust.  These issues are

addressed with respect to each of the eights claims, proceeding in chronological order by date of

the underlying incident.[4]

**February 15, 2005:**  Plaintiff claims that on this date C.O. Howard threw "hot coffee" at

plaintiff's cell slot.  Compl. (Facts) at 3.

Defendants maintain that this incident is unexhausted because plaintiff did not file a

timely grievance.  Defs. MOL at 7.  The first grievance filed by plaintiff in 2005 and recorded by

the Upstate IGP was Grievance UST 23622-05, which was dated May 19, 2005, more than one

month later.  Gregory Aff. ¶¶ 7-8 and exs. A and B.[5]  There is no record in the CORC database

"of such an incident ever being appealed as a grievance to CORC."  Bellamy Aff. ¶ 10.

_____

[4]  For purposes of the pending summary judgment motion, the facts are related in a light
most favorable to plaintiff, as the non-moving party, with all inferences drawn in his favor.
*Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998).

[5]  Exhibit A is a copy of the computer printout of plaintiff's grievance records at Upstate
for the years 2005 - 2007.  In Grievance UST 23622-05, plaintiff describes the hot coffee
incident as follows: "[C.O. Howard] threw the contents at my cell mate's face (hot coffee)."
Gregory Aff. ex. B.  Plaintiff goes to state that "[m]y cell mate and I have both been advised that
our complaints were never received, and time was allowed to expire!"  *Id.*

According to plaintiff , he filed a complaint regarding the "hot coffee" incident on February 15, 2005, which "was held by staff" and "did not make it to the IGRC in time for processing at no fault of plaintiffs." Pl. Stmt. ¶¶ 2, 4. Plaintiff relies on a memorandum dated April 7, 2005 addressed to plaintiff from "L. Peary - Inmate Grievance Program." Pl. Stmt. ex. A. In this memorandum, Peary acknowledged that plaintiff submitted a complaint "dated 2/15/05" and advised plaintiff that the complaint was not processed as a grievance because it was received "outside the time frames for filing a grievance." *Id*. The memorandum goes on to state that if plaintiff provided "proof of mitigating circumstances within 7 days of the date of this correspondence," his complaint would be processed in accordance with the grievance procedures. *Id*. Plaintiff does not claim to have made a further submission as Peary advised. Rather, plaintiff states only that he "could not however appeal complaint due to being [an ongoing subject] of harassment." Pl. Stmt. ¶ 3.

Here, the record reflects that plaintiff did not file a timely grievance regarding the hot coffee incident and moreover, despite having been afforded an opportunity to mitigate his late filing, elected not do so. Plaintiff's unsupported assertion that he could not pursue his grievance remedies because he was being harassed by unidentified corrections personnel does not provide a basis for a finding of estoppel. *See Snyder,* 2009 WL 691940, *9. The record does not disclose a realistic fear of retribution on plaintiff's part sufficient to estop defendants from asserting the defense of non-exhaustion or otherwise justifying plaintiff's failure to exhaust.

Based upon the record before this Court, plaintiff did not file a timely grievance regarding the "hot coffee" incident, and there is no basis upon which to excuse that failure or to estop defendants from asserting that affirmative defense. This claim is dismissed.

11

**May 10, 2005:**  Plaintiff claims that on this date C.O. Howard "took family photos, and magazines out of [Plaintiff's] cell."  Compl. (Facts) at 3.

Defendants urge dismissal of this claim as unexhausted because the records maintained at Upstate do not reflect a grievance from plaintiff regarding this incident, and no grievance appeal appears in the CORC records corresponding to either the date or the nature of the incident.  Defs. MOL at 7; Gregory Aff. ¶ 8 and ex. A; Bellamy Aff. ex. A.[6]

Plaintiff admits that he did not file a grievance (or a grievance appeal) regarding this incident.  Pl. Stmt. ¶¶ 5-7.  Plaintiff does not contend in his motion opposition papers that defendants should be estopped from raising the issue of exhaustion or that special circumstances exist which justify his failure to exhaust his administrative remedies.

Based upon the foregoing, this claim is unexhausted and is dismissed.

**May 19, 2005:**  Plaintiff claims that on this date C.O. Howard engaged in "harassment, threats and misconduct."  Compl. (Facts) at 3.  Plaintiff filed Grievance UST 23622-05 dated May 19, 2005.  Gregory Aff ex. B.  In that grievance, plaintiff complained that C.O. Howard "badgered" him and, after first letting the juice containers fall off of the flap, "stacked the juice containers up 3 high so they could not fit [sic] throw cell slot."  *Id*.  Grievance UST-23622-05 was denied by the Superintendent on June 6, 2005.  Gregory Aff. ¶ 9 and ex. B.

Defendants maintain that this claim is unexhausted because plaintiff did not appeal the denial of his grievance to CORC.  Defs. MOL at 8; Bellamy Aff. ¶¶ 8-9 and ex. A.

Plaintiff admits that he did not appeal the denial of grievance UST 23622-05 to CORC.

---

[6]  Exhibit A to the Bellamy Affidavit is a copy of the computer printout of plaintiff's grievance records at CORC for the years 2005 - 2008.

Pl. Stmt. ¶¶ 8-10.  Plaintiff does not contend in his motion opposition papers that defendants

should be estopped from raising the affirmative defense of non-exhaustion or that his failure to

exhaust his administrative remedies is justified by special circumstances.

This claim is unexhausted and is dismissed.

**April 7, 2006:**  Plaintiff claims that on this date C.O. Howard was verbally abusive to

him during a pat frisk and denied him a telephone call concerning the death of a family member.

Compl. (Facts) at 3.  Plaintiff states that he "notified the Inspector General's Office" about this

incident.  *Id*.

Defendants seek dismissal of this claim on the ground that plaintiff did not exhaust his

administrative remedies regarding this incident.  Defs. MOL at 8.  The grievance records at

Upstate do not include a grievance from plaintiff regarding this incident.  Gregory Aff. ¶ 11 and

ex. A.  There is no record in the CORC data base "of such an incident ever being appealed as a

grievance to CORC."  Bellamy Aff. ¶ 11 and ex. A.

Plaintiff opposes summary judgment, relying on a letter of complaint regarding the April

7, 2006 incident which he sent to DOCS Commissioner Goord on April 7, 2006.  Pl. Stmt. ¶¶ 11-

12 and ex. C.  In that letter, plaintiff complained about this incident and stated that C.O. Howard

had been engaged in ongoing harassment of plaintiff.  The letter was assigned #083650.  Pl.

Stmt. ex. C.  Plaintiff does not claim to have received a response to this letter.  Plaintiff does not

claim to have taken any further actions to exhaust his administrative remedies, nor does he claim

that C.O. Howard "misled, threatened, or otherwise deterred" him from utilizing the IGP.  *See*

*Winston*, 2008 WL 2263191, at *9.  Plaintiff admits that there was no appeal to CORC.  Pl. Stmt.

¶ 13.

13

Upon review, the Court finds that this claim is unexhausted. After *Woodford,* notice alone of an inmate's complaint is insufficient because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance" and "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Woodford,* 548 U.S. at 95; see *Snyder*, 2009 WL 691940, *10 (plaintiff's complaints which led to investigation by DOCS Inspector General, "while perhaps constituting substantive exhaustion, does not satisfy the PLRA's procedural exhaustion requirement."). Under *Woodford,* plaintiff cannot satisfy the PLRA's exhaustion requirement by filing a complaint with the superintendent. *Macias*, 495 F.3d at 44.

Because plaintiff did not comply with the established grievance protocol of the IGP, and in the absence of evidence demonstrating that defendants should be estopped from asserting non-exhaustion or that special circumstances exists which justify the failure, this claims is unexhausted and is hereby dismissed.

**August 7, 2006:** Plaintiff claims that on this date C.O. McGaw and C.O. Willette used excessive force against him during a strip search, causing serious injury. Plaintiff claims that C.O. Galiger and C.O. Green failed to intervene and protect him from the assault. Compl. (Facts) at 4-5. Plaintiff filed Grievance UST 27819-06 regarding this incident. *Id.* Grievance UST 27819-06 was denied by the Superintendent on September 13, 2006. Gregory Aff. ¶ 12 and ex. C.

Defendants seek summary judgment dismissing this claim as unexhausted. Defs. MOL at 8. There is no record that plaintiff appealed the denial of this grievance to CORC. Bellamy Aff. ¶¶ 8- 9 and ex. A.

14

In response, plaintiff claims that he timely appealed the denial of his grievance to CORC on September 18, 2006.  Pl. Stmt. ¶¶ 14-16; Pl. MOL at 5, 12-13.  Plaintiff relies on a copy of the Superintendent's response to Grievance UST 27819-06 which includes plaintiff's "Appeal Statement" dated September 18, 2006.  Pl. Stmt. ex. B.  Hand-written on that document (presumably by plaintiff) is the following: "Received on 9/18/06 filed on 9/18/06 CORC."  *Id.*  Plaintiff states that he could not place his appeal in "the designated grievance mail box" because at that time inmates at Upstate (a Special Housing facility) had no direct access to a grievance "mail box" but, rather, had to hand their grievance documents to a correction officer and rely on that person to physically place the documents in the box, which is what plaintiff did.  Pl. Stmt. ¶ 16; Pl. MOL at 5.  Plaintiff has also submitted a copy of a letter dated August 6, 2007 addressed to IGP Director "Tomas G. Baben," regarding his appeal of Grievance UST 27819-06.  Pl. Stmt. ex. B.  Plaintiff stated in that letter that he had not received confirmation that his appeal of Grievance UST 27819-06 was received by CORC and expressed concern that the appeal might have been "intercepted by staff and never processed."  *Id.*  On the basis of these documents, plaintiff argues summary judgment dismissing this claim as unexhausted is unwarranted.  Pl. MOL at 9-10.

Defendants have not replied.

In *Finch v. Servello*, 06-CV-1448 (TJM/DRH), 2008 WL 4527758 (N.D.N.Y. Sept. 29, 2008), this Court denied the defendants' motion for summary judgment dismissing the plaintiff's claim on the ground of non-exhaustion, in light of the plaintiff's sworn statement that he requested his housing officer to send a letter to his superiors attesting to plaintiff's repeated efforts to file a grievance.  This Court adopted the Report-Recommendation issued by Magistrate

15

Judge David R. Homer, which included the following analysis of the issue presented by the

defendants' summary judgment motion:

> Nevertheless, although implausible, Finch's testimony on this issue requires a
> determination of credibility, a determination that cannot be made on a motion for
> summary judgment. *See Dillon v. Morano,* 497 F.3d 247, 254 (2d Cir.2007);
> *Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 157 (2d Cir.1998)
> ("To the extent that these inconsistencies can only be resolved based upon
> credibility determinations, such questions of witness credibility are to be decided
> by the jury."); *United States v. Rem,* 38 F.3d 634, 644 (2d Cir.1994) ("Resolutions
> of credibility conflicts and choices between conflicting versions of the facts are
> matters for the jury, not for the court on summary judgment.").

*Finch*, 2008 WL 4527758 at **7-8; *see also*, *Ross v. Wood*, 05-CV-1112 (FJS/GHL), 2009 WL

3199539, *11 (N.D.N.Y. Sep. 30, 2009) (issues of fact raised by plaintiff in opposition to

summary judgment, to which defendants did not reply, preclude summary judgment on issue of

exhaustion).

Here, plaintiff has submitted evidence regarding his appeal of the grievance to CORC

sufficient to demonstrate that genuine issues of material fact exist such that summary judgment

on this claim must be denied.

**September 14, 2006:**  Plaintiff alleges that on this date C.O. Howard used excessive

force against him, twisting the handcuffs on plaintiff's wrists in a way that caused him "to

scream out in pain."  Compl. (Facts) p. 7.  Plaintiff submitted Grievance UST 28206-06.  *Id.*

This grievance was denied by the Superintendent on November 2, 2006.  Gregory Aff. ¶ 13 and

ex. D.

Defendants maintain that this claim is unexhausted because plaintiff did not appeal the

denial of Grievance UST 28206-06 to CORC.  Defs. MOL at 8; Gregory Aff. ¶ 13; Bellamy Aff.

¶ 9.

Plaintiff admits that he did not appeal the denial of Grievance UST 28206-06 to CORC. Pl. Stmt. ¶¶ 17-19.  Plaintiff does not contend in his motion opposition papers that defendants should be estopped from raising this issue of exhaustion or that special circumstances justify his failure to exhaust his administrative remedies.

In light of the foregoing, this claim is unexhausted and is therefore dismissed.

**December 20, 2006:**  Plaintiff alleges that on this date C.O. McGaw and C.O. Willette allegedly harassed plaintiff, and "denied meals, and or supplies."  Compl. (Summary of Facts). Plaintiff filed Grievance UST 29243-06 regarding this incident.  *Id.*

Defendants argue that plaintiff's claims regarding this incident are unexhausted because Grievance UST 29243-06 does not relate to the incident described in the complaint but, rather, relates to an entirely different incident which allegedly occurred on December 14, 2006 and which involved alleged verbal abuse by Officer "Waults and a refusal to provide Plaintiff with a broom for cell clean up."  Defs. MOL at 9; *see* Gregory Aff. ¶ 16 and ex. E.  Grievance UST 29243-06 was denied by the Superintendent on January 16, 2007.  *Id.*  There is no record that plaintiff appealed the denial of Grievance UST 29243-06 to CORC.  Bellamy Aff. ¶¶ 8- 9 and ex. A.

Plaintiff admits the facts as outlined above.  Pl. Stmt. at ¶¶ 23-26.  Plaintiff does not contend in his motion opposition papers that defendants should be estopped from raising the issue of exhaustion or that special circumstances justify his failure to exhaust his administrative remedies.

Based upon the foregoing, this claim is unexhausted and is dismissed.

**March 15, 2007:**  Plaintiff claims that on this day C. O. McGaw denied plaintiff his "diet

tray" at the evening meal.  Compl. (Summary of Facts).  Plaintiff filed Grievance UST-30148-07.
*Id*.

Defendants seek summary judgment dismissing this claim as unexhausted.  Defs. MOL at

10.  Defendants note that Grievance UST-30148-07 is dated February 7, 2007, and complains

that C.O. McGaw denied plaintiff his evening meal on February 5, 2007 –  not March 15, 2007.

*Id*.; *see* Gregory Aff. ¶ 17 and ex. F.  Grievance UST-30148-07 was denied by the

Superintendent on March 29, 2007.  Gregory Aff. ¶ 17 and ex. F.  There is no record that plaintiff

appealed the denial of this grievance to CORC.  Bellamy Aff. ¶ 9 and ex. A.  Defendants argue

that summary judgment is appropriate because claims arising out of the March 15, 2007 incident

were not exhausted and, moreover, because even if plaintiff intended to refer in his complaint to

an incident which occurred on February 5, 2007, that claim is also unexhausted because plaintiff

did not appeal the denial of Grievance UST-30148-07 to CORC.  Defs. MOL at 10.

In response, plaintiff admits the facts outlined above.  Pl. Stmt. ¶¶ 27-30.  Plaintiff does

not contend in his motion opposition papers that defendants should be estopped from raising the

issue of exhaustion or that special circumstances justify his failure to exhaust his administrative

remedies.

Based upon the foregoing, this claim is unexhausted and is dismissed.

**(C)  Merits of Plaintiff's Exhausted Claims**

In addition to the matters discussed above, the complaint asserts claims arising out of

three additional incidents.  Complaint (Facts) at 3, 8; (Summary of Facts).  Defendants

acknowledge that plaintiff exhausted his administrative remedies with respect to these three

claims.  Defs. MOL at 9.  Defendants nevertheless seek summary judgment dismissing these

18

claims for failure to state a claim upon which relief may be granted for the violation of plaintiff's

constitutional rights. *Id*. at 9-12.

Plaintiff's remaining claims arise out of the following three incidents.[7]

**October 26, 2005**:  Plaintiff claims that on this date C.O. Howard harassed and

threatened him.  Compl. (Facts) at 3.  Plaintiff filed Grievance UST-25150-05 complaining that

C.O. Howard intentionally "shoved" 2 containers of juice and 4 containers of milk through the

feed slot of Plaintiff's cell, followed by a feed up tray, "purposely knocking them to the floor

inside the cell."  Gregory Supp. Aff. ex. G.  The grievance also accused C.O. Howard of stating

to plaintiff: "I bet you wont beat my next ticket."  *Id*.  Plaintiff complained that C.O. Howard's

behavior was "unprofessional" and asked that he not be "harassed, set up, or verbally abused nor

threaten by Officer Howard."  *Id*. at 4, 6.

**August 16, 2006:**  Plaintiff claims that on this date "Mr Willette have harassed, denied

MEALS, and or supplies to the plaintiff."  Compl. (Summary of Facts).  Plaintiff filed Grievance

UST-27855-06 complaining that a corrections officer identified as "Waults" (but said to be the

officer who allegedly assaulted plaintiff on August 7, 2006; *i.e.* C.O. Willette) "refused to issue

requested claims forms and grievances forms per his duty. ... I was also denied the morning meal

during feed up by this Officer and Officer Allen."  Gregory Supp. Aff. ex. H.  Plaintiff asked in

the grievance to be "assured of his safety" and to have the officer "reprimanded and told not to

spit in peoples food."  *Id*.

**October 14, 2006:**  Plaintiff claims that on this date, during an escort to the visitor area,

---

[7]  Plaintiff admits the relevant facts regarding these three incidents as set forth herein.  Pl.
Stmt. ¶¶ 32-43.  Plaintiff has not set forth legal arguments in opposition to this aspect of
defendants' motion for summary judgment.

C.O. Howard "boasted" about his involvement in the alleged assault on plaintiff on August 7,

2006, and attempted to provoke plaintiff to violence by making racially offensive remarks.

Compl. (Facts) at 8.[8]  Plaintiff filed Grievance UST-28590-06 complaining that C.O. Howard

"crossed the line yet again."  Gregory Supp. Aff. ex. I.  Plaintiff asked for an "order of

protection" and for C.O. Howard to be fired or reassigned.  *Id*.

Defendants characterize plaintiff's claims as arising under the Eighth Amendment, and

argue that summary judgment should be granted dismissing these claims because they fail to state

claims upon which relief may be granted.  Defs. MOL at 10-12.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses

punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible

with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v.*

*Gamble,* 429 U.S. 97, 102 (1976); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing,

*inter alia, Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither

does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's

confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832

(1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).  The Eighth Amendment

"imposes duties on these [prison] officials, who must provide humane conditions of

confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter,

and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"

*Farmer,* 511 U.S. at 832 (citation omitted).

---

[8]  According to plaintiff. C.O. Howard made statements such as "go ahead take a shot,"
"we've got a boy coming through," and "come on bitch take a swing."  *Id*.

A claim alleging that the plaintiff's conditions of confinement violate the Eighth

Amendment must satisfy both an objective and subjective requirement –  the conditions must be

"sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that

prison officials acted subjectively with "deliberate indifference." *Wilson v. Seiter,* 501 U.S. 294,

297-98 (1991).

It is well-settled that words alone, however violent, are not held to amount to an assault,

or to constitute cruel and unusual punishment under the Eighth Amendment. *Johnson v. Glick*,

481 F.2d 1028, 1033 n. 7 (2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973)).  In other words,

§ 1983 is "not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F. Supp.2d

113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary,* 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)).

Accordingly, "verbal harassment or profanity alone, unaccompanied by an injury no matter how

inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of

any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Moncrieffe*

*v. Witbeck,* 97-CV-253 (NAM/DRH), 2000 WL 949457, *3 (N.D.N.Y. Jun. 29, 2000) (quoting

*Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y. 1998)); *see also Cossey v. Killacky*,

04-CV-6305CJS(P), 2004 WL 1960163, *2 (W.D.N.Y. Aug. 16, 2004) (citing cases).[9]

---

[9]  A prisoner can state a claim under the Eighth Amendment against a corrections officer who spreads malicious rumors about him if the rumors "incited other inmates to assault [the plaintiff] ..., thereby placing him at grave risk of physical harm." *Young v. Coughlin,* 93 Civ. 262, 1998 WL 32518, *7 (S.D.N.Y. Jan. 29, 1998).  However, if the plaintiff fails to allege--with concrete facts, not conclusory assertions--that he has suffered an objectively "sufficiently serious" injury or that the corrections officer acted with a "sufficiently culpable state of mind," the claim must be dismissed.  *Dawes v. Walker,* 239 F.3d 489, 494 (2d Cir. 2001) (references to prisoner as "informant" or a "rat" in conversations with other inmate not sufficient to give rise to an inference that plaintiff actually faced a substantial risk of serious harm from other inmate); *see Bouknight v. Shaw,* 08 Civ. 5187,  2009 WL 969932, *4 (S.D.N.Y. Apr. 6, 2009) (where plaintiff has not alleged any facts that, if proven, would establish that he ever faced actual or imminent

Actions which may reasonably be understood to been taken for purposes of harassment and abuse, but which did not pose a substantial risk of serious harm to the inmate, may also fall short of the requirement for a viable Eighth Amendment claim that the harm be, objectively "sufficiently serious." *See, e.g., Benitez v. Locastro*, 04-CV-423 (NAM/RFT), 2008 WL 4767439, *5 (N.D.N.Y. Oct. 29, 2008) (allegation that officers threw dirty mop water into plaintiff's cell and overflowed his toilet, even if true, constitute no more than *de minimis* actions best described as harassment, not cruel and unusual punishment); *McFadden v. Solfaro,* 95 Civ. 1148, 1998 WL 199923, **2, 13 (S.D.N.Y. Apr. 23, 1998) (prisoner's claim that a corrections officer regularly threw coffee, juice, and water into his cell and placed hair in his food tray was not a triable cause of action under the Eighth Amendment); *see also Samuels v. Hawkins,* 157 F.3d 557, 558 (8th Cir. 1998) (prison guard's actions of throwing a liquid at plaintiff that did not harm him in any way were *de minimis*).[10]

In this case, plaintiff claims that on two occasions, separated in time by nearly one year, C.O. Howard was verbally abusive to him.[11]  Plaintiff also claims that on one of those occasions, C.O. Howard needlessly shoved his food through the feed up slot so that it fell to the floor of his

---

harm, court will not assume that a serious risk existed merely because corrections officer spread rumors about him).  Plaintiff makes no such claim in this action.

[10]  Similarly, a *de minimis* use of force will rarely suffice to state a constitutional claim. *See Hudson*, 503 U.S. at 9-10; *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

[11]  Plaintiff also alleges in his complaint that C.O. Willette "harassed" him on August 16, 2006.  This claim is without factual support of any kind in either in the complaint or in Grievance UST-27855-06.  Moreover, as noted above, plaintiff has not addressed the sufficiency of this claim in response to defendants' motion for summary judgment and it is, therefore, dismissed.

cell.  Plaintiff does not allege, nor are there any facts in the record which even suggest, that C.O.

Howard's actions actually harmed plaintiff or posed a substantial risk of serious harm.  Rather,

the undisputed facts show that C.O. Howard engaged in conduct which, if true, was inappropriate

and unprofessional, but which did not violate plaintiff's constitutional rights.  Accordingly, the

Court finds that plaintiff's claims against C.O. Howard arising out of the incidents on October

26, 2005 and October 14, 2006, do not state a claim upon which relief may be granted pursuant

to §1983 and are, therefore, dismissed.

Plaintiff claims that on August 16, 2006, C.O. Willette denied him meals and supplies.

Compl. (Summary of Fact).  In Grievance UST-27855-06, plaintiff complained that he was

"denied the morning meal," and was refused "claims forms and grievances forms."  Gregory

Supp. Aff. ex. H.  Such deprivations, alleged by plaintiff to have occurred only on one occasion,

while not to be condoned, are nonetheless *de minimis* and do not rise to a level of constitutional

significance.  *See Parker v. Peek-Co*, 06-CV-1268 (GLS/DEP), 2009 WL 211371, *4 (N.D.N.Y.

Jan. 27, 2009) (plaintiff's claim that he was "deprived of two meals on that date is *de minimis*

and does not rise to a level of constitutional significance."); *Cagle v. Perry,* 04-CV-1151

(TJM/GHL), 2007 WL 3124806, *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not

sufficiently numerous, prolonged or severe to rise to the level of an Eighth Amendment

violation."); *see also Cruz v. Church,* 05-CV-1067 (GTS/DEP), 2008 WL 4891165, **2, 12

(N.D.N.Y. Nov.10, 2008) (summary judgment granted where plaintiff failed to allege food

deprivation of sufficient proportions to support an Eighth Amendment claim).

Mindful of its obligation to construe the allegations of the *pro se* complaint broadly to

detect the strongest claim which, based upon the circumstances alleged, could be asserted by the

plaintiff, *Diaz v. United States*, 517 F.3d 608, 613 (2d Cir. 2008), the Court has considered

whether the allegations of plaintiff's complaint that C.O. Willette denied him grievance forms

and claim forms are sufficient to state a claim for the violation of plaintiff's First Amendment

right to petition government for the redress of grievances.

It is well-established that a prison inmate has no constitutional right of access to an

internal prison grievance process. *See Harnett v. Barr*, 538 F. Supp.2d 511, 522 (N.D.N.Y.

2008); *Chadwick v. Mondoux*, 05-CV-975 (GLS/GJD), 2007 WL 2891655, *6 (N.D.N.Y. Sep.

28, 2007); *Rhodes v. Hoy*, No. 05-CV-836, 2007 WL 1343649, *6 (N.D.N.Y. May 5, 2007)

(Scullin, J.) (noting that inmates have "no constitutional right of access to the established inmate

grievance program").  Accordingly, plaintiff's allegations that C.O. Willette refused to provide

him with grievance and/or claim forms on August 16, 2006, even if true, do not state a

cognizable claim for the violation of plaintiff's First Amendment rights and this claim is

dismissed. *See Graham v. Coughlin,* 86 CIV. 163, 2000 WL 1473723, *7 (S.D.N.Y. Sep. 29,

2000) (the "occasional failure of prison personnel to provide plaintiff with grievance forms does

not constitute a cognizable claim under § 1983"); *Harnett*, 538 F. Supp.2d at 522 (the refusal to

process a grievance or the improper handling of a grievance does not rise to the level of a

constitutional violation).

## III.   CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment is granted in part

and denied in part.  All of plaintiff's claims are dismissed with the exception of his claims

against defendants McGaw, Willette, Galiger, and Green arising out of the alleged use of

excessive force against plaintiff on August 7, 2006 (the "excessive force claims").  Defendants'

motion for summary judgment dismissing the excessive force claims is denied because plaintiff has adduced evidence sufficient to show that a reasonable trier of fact could conclude that plaintiff exhausted his administrative remedies with respect thereto.  Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (Dkt. No. 49) is **granted in part and denied in part** as set forth above; and it is further

ORDERED that defendant C.O. Howard is dismissed as a defendant in this action; and it is further

ORDERED that this matter is remanded to the assigned magistrate judge for a final pretrial conference on the excessive force claims, and it is further

ORDERED, that the Clerk of the Court serve a copy of this Decision and Order on the parties.

IT IS SO ORDERED.

Dated:  March 26, 2010

Thomas J. McAvoy
Senior, U.S. District Judge